## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Bloomington Chrysler Jeep Eagle, Inc.,

                         Plaintiff,

                                              Civ. No. 05-1222 (RHK/JJG)
v.                                            **MEMORANDUM OPINION
                                              AND ORDER**

DaimlerChrysler Motor Company, L.L.C.,

                         Defendant.

Danell K. Olson and J. Michael Dady, Dady & Garner P.A., Minneapolis, Minnesota, for Plaintiff.

Carey Taylor and Mark F. Kennedy, Wheeler Trigg Kennedy L.L.P., Denver, Colorado; and Stephen K. Warch, Halleland Lewis Nilan & Johnson P.A., Minneapolis, Minnesota, for Defendant.

### INTRODUCTION

Plaintiff Bloomington Chrysler Jeep Eagle, Inc. ("Bloomington Chrysler") alleges claims against Defendant DaimlerChrysler Motor Company ("DaimlerChrysler") for breach of contract, misrepresentation, and violation of the Minnesota Motor Vehicle Sale and Distribution Act. This matter comes before the Court on DaimlerChrysler's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Motion will be denied in part and granted in part.

### BACKGROUND

Bloomington Chrysler is a motor vehicle dealership located at 8000 Penn Avenue South in Bloomington, Minnesota. (Compl. ¶ 3.) It has been a dealer of the Chrysler

vehicle line since 1973, and a dealer of the Jeep vehicle line since 1991.  (Id.)  To sell the

Chrysler and Jeep vehicle lines, Bloomington Chrysler contracts with DaimlerChrysler, the

manufacturer of new Chrysler and Jeep motor vehicles, parts and accessories.  (Compl. ¶

4.)  DaimlerChrysler is a Delaware corporation with its principal place of business located

in Michigan.  (Id.)

On October 24, 1991, Bloomington Chrysler renewed its contract (the "Chrysler

Agreement") with DaimlerChrysler.  (Compl. ¶ 8.)  The Chrysler Agreement grants

Bloomington Chrysler a non-exclusive "sales locality" in which to operate its dealership.[1]

(Compl. ¶ 10.)  The "sales locality" may only be shared with other Chrysler dealers when

DaimlerChrysler deems it "appropriate."  (Compl. ¶ 13.)

On September 27, 1994, DaimlerChrysler sent a notification letter to Bloomington

Chrysler indicating the company's intention to add the Chrysler vehicle line to Park Jeep,

Inc. ("Park Jeep"), a dealership located at 1408 Highway 13 in Burnsville, Minnesota,

approximately 5.90 miles southeast of Bloomington Chrysler's location.  (Compl. ¶ 16.)

In an October 20, 1994, letter to DaimlerChrysler, Bloomington Chrysler objected to the

addition of the Chrysler vehicle line to Park Jeep.  (Compl. ¶ 19.)  Bloomington Chrysler

explained that it had recently expended a large amount of money to improve and expand its

dealership, and the investment would not be recovered if Park Jeep were allowed to carry

_____

[1] Per an addendum to the Chrysler Agreement, Bloomington's sales locality includes
cities in Anoka, Carver, Dakota, Hennepin, Ramsey, Scott and Washington counties.  (See
Compl. Ex. C.)

the Chrysler vehicle line.  (Id.)  In a responsive letter, DaimlerChrysler agreed to not

establish the Chrysler line at Park Jeep "at this time," but explained the company's goal to

have both the Chrysler and Jeep lines sold together.  (Compl. ¶ 20.)

In January 1997, Denny Hecker, owner of the Hecker Valley Chrysler dealership

("Hecker Valley"), offered Bloomington Chrysler $1.5 million in exchange for

Bloomington Chrysler's promise to refrain from protesting the sale and relocation of

Hecker's Chrysler line to Park Jeep.  (Compl. ¶ 21.)  Bloomington Chrysler rejected the

offer of $1.5 million and made a counteroffer of $3 million, an amount Bloomington

Chrysler thought would reasonably compensate the dealership for probable financial

damage caused by another Chrysler dealership in close proximity.  (Compl. ¶ 23.)  Hecker

declined the counteroffer.  (Id.)

In July 1997, Hecker sold his Chrysler line to the Apple Valley Motors dealership

("Apple Valley"), which is owned by Paul Walser and located ten miles from Bloomington

Chrysler's location.  (Compl. ¶¶ 24-25.)  Several years later, in July 2001, Walser moved

the Chrysler vehicle line from Apple Valley to 1472 Buck Hill Road in Burnsville,

Minnesota (the "First Burnsville Location"), approximately 8.70 miles from Bloomington

Chrysler's location.  (Compl. ¶¶ 26-27.)

On March 7, 2002, DaimlerChrysler notified Bloomington Chrysler of its intention

to approve a sale of assets by Walser, which would transfer Walser's Chrysler line at the

First Burnsville Location to Park Jeep's location.  (Compl. ¶ 31.)  After receiving this

notification, Bloomington Chrysler retained legal counsel and commenced legal

3

proceedings against DaimlerChrysler pursuant to the Minnesota Motor Vehicle Sale and

Distribution Act.  (Compl. ¶¶ 32-34.)  On May 7, 2002, DaimlerChrysler rescinded the

notification letter and did not allow Walser to sell his Chrysler line to Park Jeep.  (Compl.

¶ 35.)  Accordingly, Bloomington Chrysler requested dismissal of the case.  (Compl. ¶ 36.)

Seven months later, on December 12, 2002, Bloomington Chrysler contacted

DaimlerChrysler regarding rumors that DaimlerChrysler was again considering approval of

Walser's sale of his Chrysler vehicle line to Park Jeep.  (Compl. ¶ 44.)  DaimlerChrysler

denied the rumors and assured Bloomington Chrysler that it would give any required notice

if such a sale were to take place.  (Compl. ¶ 45.)  A few months later, in February 2003,

DaimlerChrysler allowed Walser to relocate his Chrysler vehicle line from the First

Burnsville Location to 602 Burkards Drive in Burnsville, Minnesota (the "Second

Burnsville Location"), approximately 8.76 miles from Bloomington Chrysler's location.

(Compl ¶¶ 37-40.)

In September 2003, Bloomington Chrysler noticed a newspaper advertisement

seeking applications for a salesperson at the Second Burnsville Location, and the listed

telephone number for job inquires was Park Jeep's number.  (Compl. ¶ 46.)  Bloomington

Chrysler once again contacted DaimlerChrysler and protested a transfer of the Chrysler

line to Park Jeep.  (Compl. ¶ 47.)  DaimlerChrysler told Bloomington Chrysler that the

owner of Park Jeep was negotiating with Walser to purchase his Chrysler vehicle line.

(Compl. ¶ 48.)

4

On March 7, 2005, Bloomington Chrysler noticed that Park Jeep was displaying new Chrysler vehicles for sale. (Compl. ¶ 52.) On March 14, 2005, it notified the Minnesota Department of Public Safety that Park Jeep was selling new Chrysler vehicles without a valid license. (Compl. ¶ 53.) It also contacted Park Jeep, asking the dealership to stop displaying new Chrysler vehicles. (Comp. ¶ 54.) Park Jeep responded on March 24, 2005, admitting to displaying Chrysler vehicles without a valid license, but stating that DaimlerChrysler had approved relocation of Walser's Chrysler vehicle line to Park Jeep on March 15, 2005. (Compl. ¶ 55.)

On June 21, 2005, Bloomington Chrysler commenced this action against DaimlerChrysler alleging four claims: (1) violation of the Minnesota Motor Vehicle Sale and Distribution Act ("MMVSDA"), Minn. Stat. § 80E.14, (2) breach of contract and the implied covenant of good faith and fair dealing, (3) intentional misrepresentation, and (4) negligent misrepresentation. (Compl. ¶¶ 59-78.) DaimlerChrysler filed this Motion in response to the Complaint.

## STANDARD OF REVIEW

When considering a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court looks to factual allegations in the Complaint. Morgan Distrib. Co., Inc. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir. 1989). All factual allegations must be accepted as true, and every reasonable inference must be made in favor of the plaintiff. Fed. R. Civ. P. 12(b)(6); Midwestern Mach., Inc. v. Northwest Airlines, Inc., 167 F.3d 439, 441 (8th Cir. 1999); Carney v. Houston, 33 F.3d 893, 894 (8th Cir. 1994). The Court will

not consider conclusory allegations or "blindly accept the legal conclusions drawn by the

pleader of the facts." <u>Kaylor v. Fields</u>, 661 F.2d 1177, 1182 (8th Cir. 1981); <u>Westcott v.

Omaha</u>, 901 F.2d 1486, 1488 (8th Cir. 1990).  In addition to the Complaint, the Court may

also consider "materials embraced by the pleadings and materials that are part of the public

record." <u>In re K-tel Int'l Sec. Litig.</u>, 300 F.3d 881, 889 (8th Cir. 2002) (citations and

internal quotations omitted).  A Complaint should not be dismissed for failure to state a

claim "unless it appears beyond a reasonable doubt that the plaintiff can prove no set of

facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S.

41, 45-46 (1957).

## ANALYSIS

On this Motion to Dismiss, DaimlerChrysler seeks dismissal of all four claims

alleged by Bloomington Chrysler.  The Court will address each issue in turn.

## I.      Violation of the Minnesota Motor Vehicle Sale and Distribution Act

Minnesota law regulates the ability of motor vehicle dealerships to locate within

close physical proximity of other dealerships selling the same line of vehicles.

Specifically, the MMVSDA requires that:

> In the event that a manufacturer seeks to enter into a franchise *establishing
> an additional new motor vehicle dealership or relocating an existing
> motor vehicle dealership within or into a relevant market area where the
> line make is then represented*, the manufacturer shall, in writing, first notify
> each new motor vehicle dealer in this line make in the relevant market area of
> the intention to establish an additional dealership or to relocate an existing
> dealership within or into that market area. *The relevant market area is a
> radius of ten miles around an existing dealership*.  Within 30 days of
> receiving the notice or within 30 days after the end of any appeal procedure

> provided by the manufacturer, the new motor vehicle dealership may
> commence a civil action in a court of competent jurisdiction . . . challenging
> the establishing or relocating of the new motor vehicle dealership . . . .
> Thereafter the manufacturer shall not establish or relocate the proposed new
> motor vehicle dealership unless the court has determined that there is good
> cause for permitting the establishment or relocation of the motor vehicle
> dealership.

Minn. Stat. § 80E.14(1) (emphasis added).  The MMVSDA contains a relocation

exception to the notice requirement:

> The relocation of an existing dealer within its area of responsibility as
> defined in the franchise agreement shall not be subject to this section, if the
> proposed relocation site is *within five miles of its existing location and is
> not within a radius of five miles of an existing dealer of the same line
> make.*

Minn. Stat. § 80E.14(1) (emphasis added).

In the Complaint, Bloomington Chrysler sets forth detailed factual allegations in

support of its claim under the MMVSDA.  First, in September 1994, DaimlerChrysler sent

a notification letter to Bloomington Chrysler indicating the company's intention to add the

Chrysler vehicle line to Park Jeep, a dealership located less than ten miles from

Bloomington Chrysler's location.  (Compl. ¶¶ 16, 17.)  When Bloomington Chrysler

threatened to invoke its right under the MMVSDA to commence a lawsuit, DaimlerChrysler

responded that it would not proceed with establishing a Chrysler line at Park Jeep "at this

time."  (Compl. ¶¶ 19-20.)  In January 1997, Bloomington Chrysler rejected an offer of

$1.5 million in exchange for its promise to refrain from protesting the relocation of

Hecker's Chrysler line to Park Jeep.  (Compl. ¶ 21.)  Over the next five years,

DaimlerChrysler approved three different location changes for the Chrysler line, ending

with the establishment of Chrysler vehicles at Park Jeep.  (Compl. ¶¶ 17, 24, 27, 37, 55.)

Based on these factual allegations, Bloomington alleges that DaimlerChrysler "abused and

manipulated the purpose" of the MMVSDA to evade the statute's notice requirements.

(Compl. ¶ 60.)

    In response, DaimlerChrysler contends that it did not violate the MMVSDA because

the establishment of the Chrysler line at Park Jeep fell within the relocation exception to

the MMVSDA, which eliminates the notice requirement if "the relocation of an existing

dealer" is (1) "within five miles of its existing location" and (2) "not within a radius of five

miles of an existing dealer of the same line make."  Minn. Stat. § 80E.14(1).

DaimlerChrysler points out that each location change alleged by Bloomington Chrysler

involved removing and establishing the Chrysler line within five miles of its existing

location, and none of the relocations was within a five-mile radius of Bloomington

Chrysler's location.  (Mem. in Supp. at 6-11.)

    The Court concludes that Bloomington Chrysler has not alleged a viable claim under

the MMVSDA.  The relevant exception to the MMVSDA clearly states that if "the

relocation of an existing dealer" is (1) "within five miles of its existing location" and (2)

"not within a radius of five miles of an existing dealer of the same line make," then notice

and an opportunity to protest are not required by law.  Minn. Stat. § 80E.14(1).  Although

the word "relocation" is not defined in the MMVSDA, the Court gives effect to its plain

meaning, which is the "removal and establishment of someone or something to a new

place."  Black's Law Dictionary, 1294 (7th ed. 1999); see Green Giant Co. v. Comm'r of

Revenue, 534 N.W.2d 710, 712 (Minn. 1995) (when statutory language is clear, the court must give effect to its plain meaning).  In this case, each of the three location changes approved by DaimlerChrysler fell within the MMVSDA exception.  First, the Chrysler line was removed from Apple Valley's location and established less than five miles away at the First Burnsville Location, which is 8.70 miles from Bloomington Chrysler's location. (Compl. ¶¶ 27-28.)  Next, the Chrysler line was removed from the First Burnsville Location and established less than one mile away at the Second Burnsville Location, which is 8.76 miles from Bloomington Chrysler's location.  (Compl. ¶¶ 39-40.)  Finally, the Chrysler line was removed from the Second Burnsville location and established 3.67 miles away at Park Jeep's location, which is located 5.90 miles from Bloomington Chrysler's location.  (Compl. ¶ 56, Ex. C.)  Because the MMVSDA exception was applicable to each of these relocations, DaimlerChrysler was not required to give Bloomington Chrysler notice of its intentions or activities.

In spite of the plain language of the MMVSDA, Bloomington Chrysler argues that DaimlerChrysler "should be prohibited from using the exception to the [MMVSDA] to do indirectly that which it could not do directly."  (Mem. in Opp'n at 12.)  It alleges that DaimlerChrysler manipulated the MMVSDA exception to complete a "three-step" process over a five-year period to establish the Chrysler line at Park Jeep without providing Bloomington Chrysler the right to protest.  (Compl. ¶¶ 59-67.)  It argues that DaimlerChrysler never intended to "establish" the Chrysler line at any of the dealerships except Park Jeep, making each move an interim step to its ultimate goal.  (Mem. in Opp'n at

17.)  Bloomington Chrysler also argues that DaimlerChrysler's improper use of the

exception clashes with the legislative intent behind the MMVSDA, which is "to prevent

fraud, impositions, and other abuses upon its citizens and to protect and preserve the

investments and properties of the citizens of the state."  (Mem. in Opp'n at 13.)

Bloomington Chrysler has not, however, provided the Court with any case law

directly interpreting the MMVSDA or supporting its arguments.  Instead, it relies on

Heritage Jeep-Eagle, Inc. v. Chrysler Corp., where the Massachusetts Court of Appeals

reversed the district court's grant of summary judgment by concluding that the legislative

intent behind the Massachusetts Motor Vehicle Dealer Act was at odds with Chrysler's

approval of the relocation of an existing dealership within a twenty-mile radius of another

Chrysler dealership.  655 N.E.2d 140, 143-44 (Mass. App. Ct. 1995).  The reasoning of

Heritage Jeep Eagle is not persuasive here because the language and structure of the

Massachusetts Motor Vehicle Dealer Act markedly different from the MMVSDA.[2]

---

[2] The Massachusetts Motor Vehicle Dealer Act, Mass. Gen. Laws ch. 93B, § 4(3)(1)
(1977), prohibits a motor vehicle manufacturer from:

> Arbitrarily and without notice to existing franchisees as hereinafter
> provided, to grant or enter into a franchise or selling agreement to or with an
> additional franchisee who intends or would be required by such franchise or
> selling agreement to conduct its dealership operations from a place of
> business situated within the relevant market area of an existing franchisee or
> franchisees representing the same line make, or whose specific area or areas
> of responsibility encompasses or includes all or a substantial portion of the
> relevant market area of such existing franchisee or franchisees regardless of
> whether such franchise or selling agreement delineates a specific area of
> responsibility or recites that the area of responsibility of such appointee is to
> be shared or operated in common with others.

10

Furthermore, this Court will not interpret the MMVSDA in a way that is inconsistent with the MMVSDA's plain meaning.  Accordingly, Bloomington Chrysler has failed to state a viable claim under the MMVSDA, and DaimlerChrysler's Motion to Dismiss that claim will be granted.

## II.   Breach of Contract

Bloomington Chrysler's second claim is for breach of contract.  Specifically, it alleges that DaimlerChrysler breached the implied covenant of good faith and fair dealing in the Chrysler Agreement when it allowed the establishment of the Chrysler line at Park Jeep's dealership, interfering with Bloomington Chrysler's ability to fulfill its obligation to sell Chrysler vehicles within its sales locality.  (Compl. ¶¶ 68-71.)  DaimlerChrysler argues that dismissal of the breach of contract claim is appropriate based on express language in the non-exclusive sales contract which allows it to approve the establishment of the Chrysler line at competing dealerships "as appropriate."  (Mem. in Supp. at 11-14.)

A contract must be interpreted by giving meaning to all of its provisions.  Harris v. The Epoch Group, L.C., 357 F.3d 822, 825 (8th Cir. 2004).  In addition, every contract contains an implied covenant of good faith and fair dealing.  White Stone Partners L.P. v. Piper Jaffray Cos., Inc., 978 F. Supp. 878, 880-81 (D. Minn. 1997).  Minnesota law imposes the implied covenant of good faith and fair dealing "to prevent one party from unjustifiably hindering the other party's performance of the contract."  Sterling Capital Advisors, Inc. v. Herzog, 575 N.W.2d 121, 125 (Minn. Ct. App. 1998).  "A good faith performance of a contract includes faithfulness to an agreed common purpose and

11

consistency with the justified expectations of the other party." White Stone Partners, 978

F. Supp. at 881 (citing Restatement (Second) of Contracts § 205 cmt. a).  Without an

implied covenant of good faith, an agreement vesting complete discretion in one party may

be illusory.  White Stone Partners, 978 F. Supp. at 881(citing C.R.I., Inc. v. Watson, 608

F.2d 1137 (8th Cir. 1997)) (applying Minnesota law).

        In this case, both parties acknowledge the existence of a valid contract.  (Compl. ¶¶

8-15; Mem. in Supp. at 2.)  In the Chrysler Agreement, Bloomington Chrysler agreed to

"actively and effectively sell and promote the retail sale of Chrysler vehicles, parts and

accessories in its sales locality."  (Compl. ¶ 12.)  It also agreed to "use its best efforts to

promote energetically and sell aggressively and effectively at retail each and every Chrysler

model that is manufactured for sale within the United States."  (Compl. ¶ 14.)  In the

Complaint, Bloomington Chrsyler alleges that DaimlerChrysler breached the Chrysler

Agreement and its implied covenant of good faith by: (1) "adding the Chrysler vehicle line

to Park Jeep, a dealership located within Bloomington's sales locality," (2) "interfering

with Bloomington's obligation to actively and effectively sell and promote the retail sale of

Chrysler vehicles in its sales locality," and (3) "interfering with Bloomington Chrysler's

obligation to promote energetically and sell aggressively and effectively at retail each and

every model of Chrysler vehicles manufactured in the United States."  (Compl. ¶ 70.)

Bloomington Chrysler argues that "if the [Chrysler Agreement] is construed to allow

[DaimlerChrysler] absolute discretion to relocate the Chrysler line, this would render the

other provisions and the entire purpose of the Agreement meaningless."  (Mem. in Opp'n at

12

18.)  Based on <u>White Stone Partners</u>, Bloomington Chrysler contends that

DaimlerChrysler's discretion must be exercised in good faith.  (Mem. in Opp'n at 20.)

 In support of its Motion to Dismiss the breach of contract claim, DaimlerChrysler

points out that the Chrysler Agreement expressly authorizes it to add the Chrysler vehicle

line to dealerships within Bloomington Chrysler's sales locality as "appropriate."  (Mem. in

Supp. at 11-12; Compl. ¶ 13.)  Based on this express provision, DaimlerChrysler contends

that it properly exercised a contractual right when it approved the relocation of Walser's

Chrysler line to Park Jeep's location.  (Mem. in Supp. at 12.)  In addition, DaimlerChrysler

argues that an implied covenant of good faith cannot be used to defeat express contract

terms, but instead is "a gap-filler that only becomes operative when the agreement does not

cover the parties' obligations at issue."  (<u>Id.</u>)

 Accepting all factual allegations as true, and making every reasonable inference in

favor of Bloomington Chrysler, the Court concludes that Bloomington Chrysler has alleged

a viable claim for breach of contract.  The Chrysler Agreement's provision giving

DaimlerChrysler the ability establish other Chrysler dealers within Bloomington Chrysler's

sales locality as "appropriate" is ambiguous.  Under Minnesota law, the Chrysler

Agreement contains an implied covenant of good faith and fair dealing.  <u>See e.g.</u>, <u>White</u>

<u>Stone Partners</u>, 978 F. Supp. at 880-81.  The facts alleged by Bloomington Chrysler in the

Complaint call into question whether DaimlerChrysler breached the covenant of good faith

when it allowed multiple relocations of the Chrysler line throughout Bloomington

Chrysler's sales locality.  Accordingly, DaimlerChrysler's Motion to Dismiss the breach of contract claim will be denied.[3]

## III.   Intentional Misrepresentation

Bloomington Chrysler's third claim is for intentional misrepresentation. Specifically, it alleges that DaimlerChrysler "made false and material misrepresentations and omissions of fact . . . including misrepresenting that [DaimlerChrysler] no longer intended to add the Chrysler vehicle line to Park Jeep."  (Compl. ¶ 72.)  DaimlerChrysler contends that Bloomington Chrysler has not pled its misrepresentation claim with the particularity required by Federal Rule of Civil Procedure 9(b), and cannot allege facts necessary to support the claim.  (Mem. in Supp. at 15-18.)

In "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be plead with particularity."  Fed. R. Civ. P. 9(b).  In order to meet this heightened pleading requirement, a plaintiff must set forth the "who, what, when, where and how" for each fraud claim in a complaint.  Parnes v. Gateway 2000, Inc., 122 F.3d 539, 550 (8th Cir. 1997).  "Because one of the main purposes of [Rule 9(b)] is to facilitate a defendant's ability to respond and to prepare a defense to charges of fraud, conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule."  Commercial Prop. Inv., Inc. v. Quality Inns Int'l, Inc., 61 F.3d 639, 644

---

[3] Whether, after completion of discovery, Bloomington Chrysler will be able to survive a summary judgment motion or a motion for judgment in its favor at trial are issues for another day.

(8th Cir. 1995) (internal citation omitted).  Rule 9(b) applies to both common law and

statutory fraud claims made under Minnesota law where "the gravaman of the complaint is

fraud."  Tuttle v. Lorillard Tobacco Co., 118 F. Supp. 2d 954, 963 (D. Minn. 2003); United

States v. Napco Int'l, Inc., 835 F. Supp. 493, 495 (D. Minn. 1993).

To establish a claim for intentional misrepresentation under Minnesota law,

Bloomington Chrysler must show (1) DaimlerChrysler falsely represented a material fact

with the intent to induce Bloomington Chrysler's conduct, and (2) Bloomington Chrysler

acted in reliance on DaimlerChrysler's false or misleading statement to its detriment.  See

Ag Servs. of Am., Inc. v. Schroeder, 693 N.W.2d 227, 235 (Minn. Ct. App. 2005).

DaimlerChrysler argues that Bloomington Chrysler's fraud claim should be

dismissed on Rule 9(b) grounds because the Complaint "state[s] nothing more than

conclusory allegations that DaimlerChrysler made fraudulent representations.... nowhere in

the Complaint does Bloomington Chrysler identify which statements or representations are

fraudulent."  (Mem. in Supp. at 15.)  In addition, DaimlerChrysler contends that the

Complaint fails to allege facts which fulfill the requisite elements for an intentional

misrepresentation claim.  (Mem. in Supp. at 16.)

Contrary to DaimlerChrysler's argument, the Complaint provides a particular and

sufficient factual basis for Bloomington Chrysler's intentional misrepresentation claim.

First, Bloomington Chrysler alleges that on several occasions, DaimlerChrysler directly

denied any intention to allow Chrysler vehicles to be sold at Park Jeep.  (Compl. ¶¶ 16-23,

31-16, 44-51.)  Second, Bloomington Chrysler asserts that DaimlerChrysler actually

15

intended to allow Chrysler vehicles to be sold at Park Jeep's location, and used a "three-step" approval process to accomplish that goal.  (Compl. ¶¶ 30, 58.)  Third, Bloomington Chrysler claims that it reasonably relied on DaimlerChrysler's representations to its detriment, including continued investments in its dealership and dismissing a prior legal proceeding.  (Compl. ¶¶ 36, 77.)  "When a fraudulent misrepresentation claim is based on a statement of intent, the plaintiff establishes falsity by showing that when the speaker made the statement, the speaker did not intend to perform consistently with the statement." Jacobs Mfg. Co. v. Sam Brown Co., 19 F.3d 1259, 1263-64 (8th Cir. 1994).  Accepting all factual allegations as true, and making every reasonable inference in favor of Bloomington Chrysler, these factual allegations establish the elements of a claim for intentional misrepresentation.  See Schroeder, 693 N.W.2d at 235.  Accordingly, DaimlerChrysler's Motion to Dismiss the claim will be denied.

**IV.    Negligent Misrepresentation**

Bloomington Chrysler's final claim is for negligent misrepresentation.  Specifically, it alleges that DaimlerChrysler "had a duty to use reasonable care in making representations and statements to its existing dealers," and DaimlerChrysler "breached the duty of care it owed to Bloomington Chrysler by making false and misleading representations and material omissions."  (Compl. ¶¶ 75-76.)  DaimlerChrysler counters that Bloomington Chrysler has failed to allege sufficient facts to establish the elements of the claim.  (Mem. in Supp. at 18-20.)

16

To prove a claim for negligent misrepresentation under Minnesota law, Bloomington Chrysler must show (1) a duty of care was owed by DaimlerChrysler when conveying information to Bloomington Chrysler, (2) DaimlerChrysler breached that duty by negligently supplying false information, (3) Bloomington Chrysler reasonably relied on the misrepresentation, and (4) such reliance was the proximate cause of injury and actual damages to Bloomington Chrysler.  See Syverson v. Firepond, Inc., 383 F.3d 745, 749 (8th Cir. 2004) (applying Minnesota law).  In support of its Motion to Dismiss the claim, DaimlerChrysler argues that it did not owe a duty of care to Bloomington Chrysler under the circumstances.  (Mem. in Supp. at 19).

The Court concludes that Bloomington Chrysler has not alleged a viable claim for negligent misrepresentation.  A required element in a claim for negligent misrepresentation "is that the alleged misrepresenter owes a duty of care to the person to whom they are providing information."  Smith v. Woodwind Homes, Inc., 605 N.W.2d 418, 424 (Minn. Ct. App. 2000).  Under Minnesota law, "no duty of care exists between sophisticated equals negotiating a business transaction unless the parties have a special relationship."  Children's Broad., 245 F.3d at 1019.  In Children's Broad., the Eighth Circuit affirmed summary judgment on the plaintiff's negligent misrepresentation claim because there was no evidence that the plaintiff and the defendant had a special relationship as required by Minnesota law.  Id.  Bloomington Chrysler has been contracting and working with DaimlerChrysler since 1973, when the dealership first started selling the Chrysler vehicle line.  (Compl. ¶ 3.)  Like Children's Broad., Bloomington has not alleged any facts

17

establishing a "special relationship" with DaimlerChrysler, but instead has shown that the

dealership and DaimlerChrysler have always acted as "sophisticated equals negotiating a

business transaction."  245 F.3d at 1019.  Accordingly, the negligent misrepresentation

claim will be dismissed.


**CONCLUSION**

Based on the foregoing, and all of the files, records and proceedings herein, it is

**ORDERED** that DaimlerChrysler's Motion to Dismiss (Doc. No. 9) is **GRANTED** with

respect to Count I and that portion of Count III alleging negligent misrepresentation, and

**DENIED** with respect to Count II and that portion of Count III alleging intentional

misrepresentation.


Dated: December 29, 2005                                          s/Richard H. Kyle
                                                                 RICHARD H. KYLE
                                                                 United States District Judge